IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JESSICA M. THORNTON                                    PLAINTIFF/COUNTER-DEFENDANT

V.                               CASE NO. 5:20-CV-5018

JODY E. THORNTON                                        DEFENDANT/COUNTER-PLAINTIFF

MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Jody Thornton (Doc. 41). Defendant also filed a Memorandum Brief in Support and a Statement of Facts (Docs. 42 & 43). Plaintiff Jessica Thornton filed a Response in Opposition and a separate Statement of Material Facts (Docs. 46 & 47), and Defendant filed a Reply (Doc. 50). Having considered all the materials, the Court finds that Mr. Thornton's Motion for Summary Judgment (Doc. 41) should be **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

The parties in this case were formerly married and have three children together. They divorced in January 2019, and a case regarding the custody of their children remains ongoing in state court. It is undisputed that between March and July of 2019, Defendant accessed Plaintiff's Yahoo! email account using a smartphone that had been given to the parties' minor child and read emails exchanged between Plaintiff and her attorney. *See* Doc. 43, ¶ 1 & Doc. 47-1, p. 5. It is also undisputed that Mr. Thornton threatened to disclose the contents of those emails to "the judge and everyone else," including the couple's children "when the kids are 18," and that he called Plaintiff "fucking selfish," a "selfish POS," and a "shitty human." (Doc. 47-1, pp. 6, 8).

1

Ms. Thornton's amended complaint seeks relief on five counts: (1) violations of the federal Wiretap Act, 18 U.S.C. § 2511; (2) violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701; (3) violations of Arkansas Code § 5-41-202(a); (4) invasion of privacy; and (5) tort of outrage. Mr. Thornton moves for summary judgment on each of the five causes of action. As to Count I, he argues that since Ms. Thornton does not allege contemporaneous interception of her communications, the conduct she describes is not the kind of conduct covered by this statute. Next, Defendant argues that to prevail on Count II requires a showing of actual damages, which Plaintiff has not alleged. Additionally, Defendant argues that previously opened emails that remain in an inbox are not in "electronic storage" within the meaning of the SCA. Mr. Thornton next urges the Court to decline to exercise supplemental jurisdiction over the three remaining state law claims if it dismisses the two federal causes of action. In the alternative, he seeks summary judgment as to each of Ms. Thornton's state-law claims as well.

In response, Ms. Thornton asks the Court to defer ruling on Defendant's Motion until she has been able to complete discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. In particular, Plaintiff indicates that she still needs to take Defendant's deposition, and that thereafter she intends to have an expert conduct a forensic examination of the smartphone from which Mr. Thornton accessed Plaintiff's emails. This examination would allow Ms. Thornton to determine whether Defendant's assertion is true that he never opened an email that had not already been opened by Plaintiff and determine exactly how many emails Mr. Thornton accessed without Plaintiff's permission.

## II.  LEGAL STANDARD

The standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, in order for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248).

"Although discovery need not be complete before a case is dismissed, summary judgment is proper only if the nonmovant has had adequate time for discovery." *Robinson*

*v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006). The nonmoving party may oppose a motion for summary judgment by showing that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In such a case, the court may defer or deny the motion or allow time for the nonmoving party to take discovery. Fed. R. Civ. P. 56(d)(1) & (2). "The nonmoving party must make a showing, however, that discovery has been inadequate." *Robinson*, 439 F.3d at 467.

### III.  DISCUSSION

### A. Count I: Federal Wiretap Act

The Court agrees with Mr. Thornton that there is no genuine dispute as to Plaintiff's claim for relief pursuant to the federal Wiretap Act, 18 U.S.C. § 2511. The Act imposes penalties for any person who "intentionally intercepts [or] endeavors to intercept . . . any wire, oral or electronic communication" as well as anyone who intentionally "discloses" or "uses . . . the contents" of such communication. 18 U.S.C. § 2511(1)(a), (c), (d).  The statute defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." 18 U.S.C. § 2510(12). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

"Several circuits have held that the Wiretap Act covers only contemporaneous interceptions—understood as the act of acquiring an electronic communication in transit—rather than the acquisition of stored electronic communications, which is addressed by the Stored Communications Act." *Epstein v. Epstein*, 843 F.3d 1147, 1149

4

(7th Cir. 2016) (citing *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002); *Steve Jackson Games, Inc. v. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994)). Though the 8th Circuit has not addressed this issue, Arkansas district courts have also required that the interception be contemporaneous with transmission. *See, e.g.*, *Miller v. Meyers*, 766 F. Supp. 2d 919, 924 (W.D. Ark. 2011).

In *Miller*, the defendant, the plaintiff's ex-husband, used a keylogger program to obtain the plaintiff's password and then read her emails and used the information he obtained during the subsequent divorce and child custody proceedings. 766 F. Supp. 2d at 921. The court granted summary judgment for the defendant on the plaintiff's claim under the Wiretap Act because the plaintiff "has raised no genuine issue as to whether Defendant actually intercepted any emails or other information *contemporaneously with its transmission*, as is required for a finding of liability under 18 U.S.C. § 2511." *Id.* at 923–24 (emphasis added). The defendant in *Miller* did not "obtain e-mails contemporaneously with their transmission, and thus, the [Wiretap Act] does not apply." *Id.* at 924. The court further admonished that "[s]imply because e-mail is not readily susceptible to 'interception' does not mean that the courts should bend the language of the statute so it provides an additional avenue of relief to a supposedly aggrieved party." *Id.* (quoting *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 980–81 (M.D. Tenn. 2008)).

Here, Ms. Thornton asks the Court to defer ruling on this portion of the Motion because she has not yet had the opportunity to complete discovery "in regard to the dates on and time at which he [accessed and read Plaintiff's emails], and in regard to how those dates and time compare to the [sic] those on and at which the plaintiff accessed (opened)

5

the emails for the first time." (Doc. 46, p. 6). Ms. Thornton anticipates having an expert complete "a forensic examination of the electronic device and email account at-issue." *Id.* This fails to create a genuine factual dispute regarding liability under the Wiretap Act, which requires that emails be obtained contemporaneously with their transmission. The material question is not, as Plaintiff asserts, whether Mr. Thornton accessed and read the emails before she did, but whether he had a mechanism by which to *intercept* emails *as they were sent* to or by Plaintiff. The Court concludes that there is no genuine dispute as to whether Defendant intercepted Ms. Thornton's emails as they were transmitted, and Plaintiff's claim under the Wiretap Act should be dismissed.

### B. Count II: Stored Communications Act

#### i. Actual Damages

Mr. Thornton has also moved for summary judgment on Plaintiff's claim under the SCA. He does not make an argument as to whether or not his conduct constitutes a violation of the SCA; rather, he moves for summary judgment on the basis that there is no genuine dispute as to whether Plaintiff suffered actual damages, which Defendant argues are required for relief under the statute. Section 2707 of the SCA allows a "person aggrieved by any violation of this chapter" to pursue a civil action for equitable relief, damages, and the costs and fees associated with the litigation. As to damages, the statute provides:

> The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

6

18 U.S.C. § 2707(c). Defendant urges the Court to read the first sentence of this clause as requiring actual damages in order to recover damages under the statute.

The Eighth Circuit has not interpreted this statutory language. The Fourth Circuit, however, took up this question in *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009). The Fourth Circuit noted that the Supreme Court interpreted similar language in *Doe v. Chao*, 540 U.S. 614 (2004). The statute at issue in *Doe* provided for liability that included "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619. A majority of the Supreme Court ruled that this language "guarantees $1,000 only to plaintiffs who have suffered some actual damages." *Id.* at 627. Observing that the statute in *Doe* and the SCA "contain the substantively identical following phrase: 'but in no case shall a person entitled to recover receive less than the sum of $1,000,' which 'looks back to the immediately preceding provision for recovering actual damages,'" the Fourth Circuit interpreted the SCA in the same way. *Van Alstyne*, 560 F.3d at 205 (quoting *Doe*, 540 U.S. at 620).

Confronting the same question in *Vista Marketing, LLC v. Burkett*, 812 F.3d 954 (11th Cir. 2016), the Eleventh Circuit reached the same conclusion. Both the Fourth and Eleventh Circuits recognized that some district courts disagreed with their conclusion and provided detailed justifications. This Court finds the opinions in *Van Alstyne* and *Vista Marketing* to be well-reasoned and is persuaded by their responses to the opposing conclusions of some district courts. Thus, this Court agrees that in order to be entitled to the minimum $1000 of civil damages contemplated in the statute, a plaintiff must demonstrate actual damages.

In the amended complaint, Ms. Thornton has not explicitly pleaded actual damages related to her claim under the SCA. The Court disagrees with Plaintiff's assertion that she "has alleged . . . compensatory damages for the emotional and physical trauma from which she suffered as a result of the defendant's unauthorized access and review of her email exchanges." (Doc. 47, ¶ 23). Rather, Paragraph 46 of her amended complaint seeks punitive damages, and paragraph 48 seeks compensatory damages "in the $1000.00 per separate violation amount statutorily prescribed in 18 U.S.C. § 2707(c)." (Doc. 6, ¶ 48). Plaintiff clearly interpreted the statute to provide statutory damages without requiring a showing of actual damages and pleaded the claim accordingly.

In her Statement of Material Facts, however, Ms. Thornton makes clear that she *could* plead compensatory damages. In paragraph 24, Plaintiff alleges that "the defendant's conduct caused the plaintiff to suffer from substantial fear and anxiety, emotional distress, loss of appetite, lost weight, and loss of sleep; and it necessitated professional counseling in regard to the defendant's conduct." (Doc. 47, ¶ 24). The Court also notes that Ms. Thornton made a similar assertion in response to an interrogatory. Mr. Thornton asked the Plaintiff to identify "any and all damages" she alleged were "incurred as a direct result of Defendant's alleged use and/or disclosure of any email" exchanged with her attorney, to which she responded, in part, that "Defendant's conduct also caused the plaintiff to suffer physical and emotional distress and anguish . . . ." (Doc. 47, ¶ 23). Therefore, even if the Court were to dismiss this Count, Ms. Thornton could refile and allege in her complaint the allegations she makes in the Statement of Material Facts.  Rather than prolonging the litigation by requiring Plaintiff to refile her case, the

8

Court will grant her leave to amend her complaint to allege actual damages should she wish to do so.[1]

Finally, the Court also notes that even if Ms. Thornton did not or was not permitted to amend her pleadings to plead actual damages, the Court still would not dismiss her claim under the SCA. While a failure to plead actual damages would prevent Ms. Thornton from recovering the civil damages provided in 18 U.S.C. § 2707(c), she may still be entitled to equitable relief, reasonable attorney's fees and costs, and punitive damages for a willful violation. *See* 18 U.S.C. § 2707(b)(1), (b)(3) & (c). In *Van Alstyne*, the defendants also argued that actual damages were necessary to recover punitive damages or attorney's fees. While the Fourth Circuit held that actual damages were necessary for compensatory damages, it held that such proof was not necessary for the court to grant other relief under the statute. 560 F.3d at 209. The Court obviously does

---

[1] In granting Plaintiff leave to amend, the Court is mindful that the Federal Rules of Civil Procedure "liberally permit amendments to pleadings." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000). Rule 15(a)(2) directs courts to "freely give leave when justice so requires." The Eighth Circuit has instructed that a district court may refuse to allow an amended pleading "only where it will result in 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Id.* at 525 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original). "However, delay alone is insufficient to deny a motion for leave to amend. Rather, the party opposing the motion must show it will be unfairly prejudiced." *Id.* (internal citations omitted).

In *Dennis*, the Eighth Circuit reversed the district court's decision not to permit the defendant to amend its answer to add an affirmative defense. The defendant's omission of the defense "was an oversight, unrealized until [the plaintiff] pointed it out in her response to [defendant's] summary judgment motion," and discovery in the case had already closed. *Id.* at 526. However, the Eighth Circuit found no unfair prejudice because the district court could simply reopen discovery on the narrow issue of the new affirmative defense, and three months still remained before trial. Here, discovery remains ongoing and Defendant had notice of Plaintiff's position from her response to the interrogatory quoted above, so there is even less basis for Mr. Thornton to assert unfair prejudice.

not rule, at this time, as to whether Ms. Thornton would be entitled to any such relief since that question is not before it but merely notes that a failure to plead actual damages does not necessarily bar *all* relief under the statute.

### ii. Electronic Storage

Mr. Thornton also argues that the undisputed record cannot establish a violation of the SCA as a matter of law because he did not open any emails in Ms. Thornton's inbox that she had not already opened. Plaintiff argues that she is "entitled to depose him on that and other subject matters, and only the forensic examination that is needed subsequent to doing so will determine the veracity of the defendant's assertion." (Doc. 46, p. 8). The Court agrees with Ms. Thornton that she should have the opportunity to verify Defendant's assertion that he "never opened or reviewed an email in Jessica Thornton's email account that was marked 'unread'" (Doc. 43, ¶ 14) by obtaining a forensic examination of the device and the account and taking Mr. Thornton's deposition.[2] Therefore, the Court will deny the Motion as to Plaintiff's claim under 18 U.S.C. § 2707 without prejudice to it being renewed once discovery has concluded.

---

[2] The Court notes that even if further discovery revealed that Mr. Thornton only reviewed emails that had already been opened by Plaintiff, it is an open question whether the SCA would apply in that scenario. In *Anzaldua v. Northeast Ambulance & Fire Protection District*, the Eighth Circuit considered whether the SCA protected a sent email retained "as a matter of course" in the sender's Gmail account and concluded it did not. 793 F.3d 822, 842 (8th Cir. 2015). However, the court acknowledged that the analysis might be different if the question before it involved "a copy of the email stored with [the recipient's] email service." *Id*. More recently, the Fourth Circuit has confronted the precise question of whether the SCA protects an opened email retained in the inbox of the recipient's web-based email account and offered numerous compelling arguments in determining that the statute does protect such emails. *See Hately v. Watts*, 917 F.3d 770 (4th Cir. 2019). However, to avoid issuing an opinion that might prove to be purely advisory, the Court deems it prudent to wait until discovery is completed to determine whether the SCA is applicable to a particular set of facts.

### C. State Law Violations

### i. Count III: Civil Liability for State Law Felony

Defendant's Motion also seeks summary judgment as to Ms. Thornton's state statutory claim. Under Arkansas law, a party may bring a civil claim for damage caused by conduct that would constitute a state-law felony. Ark. Code Ann. § 16-118-107. In Arkansas, knowingly accessing another's computer without proper authorization and causing "damage in excess of five hundred dollars" constitutes a Class C Felony. Ark. Code Ann. § 5-41-202.

Mr. Thornton points out that the plaintiff in *Miller v. Meyers* also made a claim under this statute, which the court dismissed at summary judgment. 766 F. Supp. 2d 919, 924–25 (W.D. Ark. 2011). However, Ms. Thornton correctly notes in response that the court's decision in *Miller* was based on its assessment that § 5-41-202 "addresses only criminal sanctions and does not mention civil penalties." *Id.* at 925. Therefore, the *Miller* court "decline[d] to create a private cause of action where one has not previously been created by the Arkansas state legislature." *Id.* Here, in contrast, Plaintiff invokes § 16-118-107 as creating a private cause of action for Mr. Thornton's alleged violation of § 5-41-202.[3]

Of course, section 16-118-107 provides a civil cause of action only if the conduct is felonious, meaning in this case that Mr. Thornton's violation of § 5-41-202 must have caused Plaintiff "damage in excess of five hundred dollars." The Arkansas Supreme Court

---

[3] Defendant suggests that the Court should infer that the court in *Miller* considered and rejected § 16-118-107 as a basis for civil liability. *See* Doc. 42, p. 12. However, a court is not expected to cast about for arguments parties might have raised but did not. Therefore, it seems much more likely that *Miller* is silent as to § 16-118-107 because that argument was not before the court, not because the court considered and rejected it without comment.

11

has not definitively established whether damages for mental anguish are included in actual damages. *See FMC Corp. v. Helton*, 202 S.W.3d 490, 503 (Ark. 2005) ("While we recognize that there is a perceived inconsistency regarding what is included in 'actual damages,' we need not address that issue in the present case."). But the state court left open the possibility that where a statute provides for the recovery of actual damages, a plaintiff could recover for emotional distress or mental anguish if he or she could prove that the defendant "violated the provision of [the statue] with the intent to cause them mental distress or that they suffered a physical injury." *Id.* (discussing recovery for "actual damages" under the Arkansas Deceptive Trade Practices Act). Defendant argues that Ms. Thornton has not adequately pleaded damages arising from this violation. However, for the reasons discussed above, Ms. Thornton may amend her complaint to allege actual damages if she wishes to do so. Therefore, the Court will deny the Motion on this claim without prejudice to it being raised again after discovery is complete.

### ii. Count IV: Invasion of Privacy

Next, Mr. Thornton seeks summary judgment on Plaintiff's claim for invasion of privacy. Under Arkansas law, the tort of intrusion upon seclusion is one of four adopted "invasion of privacy" torts. *Dodrill v. Ark. Democrat Co.*, 590 S.W.2d 840, 844 (Ark. 1979) (citing Restatement (Second) of Torts § 652 (1977)); *see Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 875 (8th Cir. 2000) (applying Arkansas law).[4] Intrusion occurs when a party "intentionally intrudes, physically or otherwise, upon the solicitude or

---

[4] While Arkansas has adopted four separate torts under the term "invasion of privacy," intrusion is the only cause of action applicable here. *See Dodrill*, 590 S.W.2d at 844. The other three adopted invasion of privacy torts are "appropriation of the other's name or likeness," "unreasonable publicity given to the other's private life," and "publicity that unreasonable places the other in a false light before the public." *Id.*

12

seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Wal-Mart Stores, Inc. v. Lee*, 74 S.W.3d 634, 644 (Ark. 2002). This tort consists of three elements: "(1) an intrusion; (2) that is highly offensive; (3) into some matter in which a person has a legitimate expectation of privacy." *Id.*

In his Motion, Defendant first argues that the alleged intrusion is not highly offensive to a reasonable person. In this case, the Court is persuaded that it should be a question for the jury whether Mr. Thornton's alleged conduct was highly offensive. In *Fletcher*, the Eighth Circuit observed that the "unauthorized release of medical information" has not been treated as "highly offensive conduct" in applying the Restatement Second "when the information could otherwise have been obtained by proper means." 220 F.3d at 876. Here, in contrast, Mr. Thornton read emails exchanged between Plaintiff and her attorney, emails that were protected by attorney-client privilege and therefore could not have been obtained in any legitimate manner. Therefore, whether the intrusion was "highly offensive" is a determination best entrusted to the jury.

Defendant also asserts that Ms. Thornton did not have a reasonable expectation of privacy in her Yahoo! inbox. Under Arkansas law, a "legitimate expectation of privacy is the 'touchstone' of the tort of intrusion." *Cannady v. St. Vincent Infirmary Med. Ctr.*, 423 S.W.3d 548, 551 (Ark. 2012) (quoting *Wal-Mart Stores, Inc.*, 74 S.W.3d at 644). In an intrusion-based invasion of privacy claim, the intruded-upon party "must have conducted himself or herself in a manner consistent with an actual expectation of privacy." *Wal-Mart Stores, Inc.*, 74 S.W.3d at 648–49. Ms. Thornton stated in her deposition that she knew Mr. Thornton "knew my password to my Yahoo account, my Yahoo e-mail account" because "it was my password for most everything that I had." (Doc. 42-4, p. 2). When

13

asked whether she had "the suspicion in 2018 that Jody had access to [her] Yahoo e-mail account at that time," she responded, "I don't necessarily know that I was worried about oh, yeah, he has access to my e-mail. But I was concerned that he had access to my information." *Id.* at p. 1.

The Court finds that here, this question is also best decided by the jury. A reasonable jury could certainly find that Ms. Thornton had a legitimate expectation of privacy in a password-protected email account. A reasonable jury might also find that this legitimate expectation persisted, despite Ms. Thornton's general suspicion that Defendant might have known how to log in to her email account had he chosen to do so. *Compare Fletcher*, 220 F.3d at 878–79 (plaintiff had no legitimate expectation of privacy in her medical information where the condition "was a matter of legitimate concern to" her employer and "jeopardized her future employment" because it created "concern for the public health") *and Pingatore v. Union Pac. R.R. Co.*, 530 S.W.3d 372, 377–79 (Ark. App. 2017) (holding that an employer's drug testing procedure could not be considered highly offensive to a reasonable person where the employee "participate[d] in a highly regulated industry [and had] a diminished expectation of privacy" (internal quotation marks omitted)) *with Coombs*, 388 S.W.3d at 462 (holding that where the plaintiff did not hang a privacy tag on the door of his hotel room but went to the room and closed the door, "the proof could lead to different conclusions by the fact-finder as to [the plaintiff's] expectation of privacy, making summary judgment inappropriate"). Thus, the Court concludes that there is a genuine dispute as to whether Ms. Thornton had a legitimate expectation of privacy in her emails and whether Defendant's alleged intrusion thereupon was highly offensive.

### iii. Count V: Tort of Outrage

Finally, Defendant has moved for summary judgment on Ms. Thornton's claim of outrage. In Arkansas, a plaintiff must establish four elements to make a claim for tort of outrage:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Kiersey v. Jeffrey*, 253 S.W.3d 438, 441 (Ark. 2007) (quoting *Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000)). Whether a defendant's conduct "meets the standard for outrage must be determined on a case-by-case basis," and the courts take "a strict approach in determining the validity of outrage claims." *Id.* "[T]he tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." *Id.*

Here, the Court is persuaded that there is not a genuine issue of material fact regarding Plaintiff's claim of outrage. Mr. Thornton admits the facts upon which Plaintiff bases her claim: that he read Plaintiff's emails with her attorney (Doc. 47-1, p. 5); that he threatened to reveal the things he learned to others, including the judge presiding over their state-court case and their children, *id.* at p. 6; and that he insulted her, *id.* at pp. 7–8. Though undoubtedly offensive, this behavior is not "beyond all possible bounds of decency" nor "utterly intolerable in a civilized community." *Compare Miller*, 766 F. Supp. 2d at 925 ("A husband prying into his wife's email, after learning that she was engaging in conversations and photo sharing, and then using damaging emails in a divorce and

custody proceedings can hardly be considered 'extreme and outrageous,' 'beyond all possible bounds of decency,' or 'utterly intolerable in a civilized society.'" (quoting *Crockett*, 19 S.W.3d at 590)) *with Croom v. Younts*, 913 S.W.2d 283, 287–88 (Ark. 1996) (affirming an award of damages for outrage where a mother filed suit after she found out that her 51-year-old male cousin had been engaged in a sexual relationship with her 15-year-old daughter, emphasizing that "[t]he facts of this case go beyond a mere sexual encounter but instead challenge basic social mores in our society").

Here, the Court cannot find that there is a genuine issue as to whether this conduct goes "beyond all possible bounds of decency." Arkansas courts take a narrow view of the tort of outrage and the Court does not find there to be a genuine dispute as to whether the conduct presented here falls within that narrow scope. Therefore, summary judgment is granted as to this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Thornton's Motion for Summary Judgment (Doc. 41) should be **GRANTED IN PART AND DENIED IN PART**. Counts I and V of the Plaintiff's amended complaint are **DISMISSED**. The Court **DENIES** the Motion as to Counts II, III, and IV without prejudice to the Motion being renewed after the close of discovery. Plaintiff may file an amended complaint **within thirty days** of the entry of this order as to actual damages only.

**IT IS SO ORDERED** on this 1st day of October 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

16